## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Mabel B. Danielson

v.

Commonwealth of Virginia

May 12, 1987

By JUDGE JOHN A. JAMISON

I have given careful consideration to the memoranda of law filed by Ms. Diane Langley, of the Attorney General's Office, then acting as counsel for the Commonwealth and by Mr. William H. Harris, in support of the Plaintiff's position. Additional correspondence from counsel followed and in the interim, I have read all cases cited by counsel, and have studied my own bench notes and analyzed applicable statutes, and annotations thereunder. Opinions by Circuit Judges who have decided similar cases have also been read and analyzed. Each point raised by counsel has been considered, whether referred to herein or not.

The first question which arises and which Mr. Harris raises rhetorically on Page 2 of his brief in opposition to Defendant's Motion to Dismiss is: "Is there a duty on the Commonwealth to provide and maintain a reasonably safe place for a juror to enter, exit and perform her duties as a juror?" Mr. Harris argues that the Attorney General's position is such a duty if any, has been "delegated" to the county. However, he finds no statutory authority for such delegation. The real question is has such a duty been delegated by the Commonwealth, or is maintenance of the courthouse a primary duty of the county, rather than the Commonwealth? Maintenance of the courthouse, including repairs to the steps or keeping them in safe condition, appears to me to be a simple housekeeping duty for which the county is responsible, rather than

the Commonwealth of Virginia. This appears to be confirmed by the Code sections cited below. Hence, no delegation of such duty from the Commonwealth to the county is necessary. Of course, the Plaintiff must take the opposite position because her theory is that she was a juror involuntarily serving the Commonwealth's courts. While the latter theory is persuasive, her comfort and safety while performing her duties is still a county administrative responsibility.

The Plaintiff's position is that she had a claim against both the county and the Commonwealth. She first exercised her claim against one "tort feasor," the county, and also a second one, the Commonwealth. Of course, with certain modern statutory exceptions not applicable here, the release of one joint tort feasor is the release of the other.

The next question on Page 2 of Mr. Harris's brief is "What agency of the Commonwealth has that duty?" I believe that inquiry is answered with the foregoing explanation, that maintenance and repair of the courthouse is primarily a county obligation. (Code Sections 15.1-257, 15.1-266).

Examination of all of the literature that has been submitted to me, as well as the Virginia Tort Claims Act, does not convince me that a county or municipality are included within the Virginia Tort Claims Act.

A study of Section 15.1-257 makes it clear that the governing body of every county and city shall provide a courthouse and that keeping the same in good order shall be chargeable to the county or city. (See Page 2 of the Commonwealth's brief). Ms. Langley, on the same page, also cited Sec. 15.1-266 which provides that "the governing body of any county shall have the power to locate, build and keep *in repair* county buildings. . . ." She then opines that the Commonwealth of Virginia "has no responsibility or duty to repair county court facilities." The meaning of the wording quoted in the above two statutes leaves no other conclusion than that the Commonwealth has no responsibility to maintain or repair local court facilities. Thus, the Commonwealth would not be a proper party defendant in this suit. If, arguendo, the Commonwealth had such responsibility there can be no question but what the Virginia Tort Claims Act would come into play. (Sec. 8.01-195, et seq.)

At the time this cause of action arose, the Plaintiff's claim against the appropriate Defendant vested *ipso facto*. The passage of an amendment which extended the time during which notice can now be given the Commonwealth to a one-year period would not affect this case. There is nothing in the statute which makes the period retroactive for all cases pending prior to the passage of the amendment. Accordingly, the fact that Plaintiff did not notify the Commonwealth until March 28, nearly eleven months following the date of her accident, would prevent her from using the Tort Claims Act. It, of course, can be argued that the Attorney General did have *actual* notice and the Plaintiff "substantially" complied. Both of these arguments are disposed of rather summarily in several cases cited and reviewed by this court, including *Daniel* v. *City of Richmond*, 199 Va. 490 (1957), and *Town of Crewe* v. *Marler*, 228 Va. 109 (1984). In the latter case, Mr. Justice Compton, speaking for the court, is unequivocal in requiring that the letter of the statute be complied with. The trial court in that case previously found that there was substantial compliance especially since the Town Manager was completely familiar with all details of the accident resulting from a defect in the sidewalk. "Actual notice is not enough," said the court. Circuit Court Judge Wood, in his opinion letter of April 11, 1986, in the case of *Ortiz* v. *Commonwealth of Virginia*, drew the conclusion that specific requirements of notice must be followed. He commented that the result in the *Ortiz* case was "harsh," particularly when the Attorney General's Office had actual notice of the claim and knew the details of the accident. It therefore seems clear that *Crewe* v. *Marler* establishes strict compliance with the requirement of notice as well as the other mandatory features of the statute.

I must therefore hold that the notice requirement of the Virginia Tort Claims Act were not fulfilled in this case.

Without the enabling feature of the Tort Claims Act, the claim must then revert to the original position of all claims against the sovereign. They simply can

not be prosecuted without the Commonwealth's permission, speaking through its legislative arm. No such specific privilege has been allowed in this case, and at this point, the Plaintiff simply has no viable cause of action remaining.

Other trial judges have reached the same conclusion, among them being Judge Melvin R. Hughes, Jr., of the Circuit Court of the City of Richmond, in the case of *Greene* v. *Lynch*, decided on January 26, 1986, as No. LH 1856-1. This was a case of untimely notice and the court found that *Crewe* v. *Marler*, *supra*, now clearly requires strict interpretation of the notice requirement.

Accordingly, the court hereby sustains the Commonwealth's Plea of Sovereign Immunity, its Demurrer, as well as its Motion to Dismiss.